IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD RAY MULLEN | * | |
| Petitioner | * | |
| v | * | Civil Action No. DKC-17-3173 |
| WARDEN TIMOTHY STEWART, MANISH PATEL, MARK INCH, and MICHAEL CARVJAL | * * | |
| Respondents | * | |

\*\*\*

**MEMORANDUM OPINION**

Petitioner Richard Ray Mullen, an inmate in the custody of the Federal Bureau of Prisons ("BOP") petitions this court for habeas corpus relief pursuant to 28 U.S.C. § 2241 (ECF Nos. 1 and 3) and Respondents move to dismiss or for summary judgment (ECF No. 6). Petitioner opposes the motion (ECF No. 8) and Respondents replied in support of their motion (ECF No. 9). The issues are fully briefed and there is no need for a hearing to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Respondents' motion, construed as a motion for summary judgment, will be granted.

**Background**

On September 25, 2009, Mullen was sentenced to serve 210 months in federal custody for violation of 21 U.S.C. § 848(a) by the United States District Court for the Western District of New York. *See United States v. Mullen*, 1:04-CR-00189-001 (W.D.N.Y.). In April of 2017, a Unit Team at FCI Cumberland, Maryland, where Mullen is confined, requested a release date of October 31, 2017. ECF No. 1 at p. 6. Mullen was later approved for a release date of November 8, 2017. *Id*.

On October 4, 2017, Mullen was informed that his release date was changed to June 28, 2018. ECF No. 1 at p. 6. Mullen claims he was told the reason for the change was "budget cuts." *Id*. at p. 7. Mullen states his case manager told him he did not know what was really going on and in response to Mullen's request to be transferred elsewhere, expressed that a transfer was not an option. *Id*.

On October 6, 2017, Mullen filed a "BP-08" appealing the decision to change his release date and stating that he wanted "his halfway house to be re-reviewed" (sic) and for the release date to be changed back to November 8, 2017. *Id*. The Unit Team's response to the BP-08 was that on "October 3, 2017, the Raleigh Residential Reentry Management Office adjusted your placement date to June 28, 2018." *Id*.

On October 13, 2017, Mullen filed a "BP-09 Request for Administrative Remedy" with the Warden at FCI Cumberland. Mullen claimed that the Unit Team and the Reentry Management Office had improperly reduced the time he would be in the Reentry program by eight months, giving him only four months of placement in a halfway house. ECF No. 1 at p. 7. As relief Mullen stated he wanted "to be given back the one (1) year by finding [him] the alternative placement that will ensure [he] received the maximum amount of one yr, in compliance with both the law and policy." *Id*. At the time Mullen filed his petition with this court he had not received a response from the Warden. *Id*.

Mullen adds, by way of background, that he was enrolled in the Residential Drug Abuse Program (RDAP) in January of 2015 and successfully completed the program ten months later. He adds that for the past two years he has been a mentor in the RDAP and has taught a job skill class as well as a "foot prints" class and a class on relapse prevention. ECF No. 1 at p. 7. Mullen states he has been incarcerated for more than 13 years and has maintained a job,

completed vocational and educational programs, and never received any violation or incident reports during that time. *Id*. As relief, Mullen requests reinstatement of the November 8, 2017 release date; an Order requiring his designation to an alternative placement in a Federal Halfway House; and release to home confinement on April 30, 2018. ECF No. 1 at p. 8.

In his amended petition, filed on November 27, 2017, Mullen addresses exhaustion of administrative remedies[1] and avers that although he began the process when the original petition was filed, the Warden had not yet responded. ECF No. 3 at p. 4. He claims that requiring him to exhaust administrative remedies would be futile because the "BOP and/or General Counsel would in fact be unlikely to find that [its] employees ha[ve] acted in [a] manner contrary to its policy when making the decision to reduce the approved RRC[2] placement of 12 months by eight (8) months to four (4) month[s] of halfway house without providing any cause for said reduction." *Id*. at p. 5. He further claims that requiring full exhaustion would result in the claim asserted in the petition becoming moot by the time of his release date of June 28, 2018. *Id*. at p. 6. Mullen requests that the court find "exceptional circumstance" present in this case due to the urgency involved and excuse his failure to exhaust administrative remedies. *Id*.

Additional facts provided by Respondents indicate that Mullen's statutory release date is October 30, 2019. ECF No. 6-3 at p. 3 ¶4. Because Mullen successfully completed the RDAP on October 26, 2015, he is eligible for discretionary early release under 18 U.S.C. § 3621(e). *Id*. at p. 4, ¶5. The statutory provision allows for a BOP inmate's sentence to be reduced after the successful completion of a treatment program with the limitation that the "reduction may not be

---

[1] Mullen also adds claims for relief and amends to include the United States as a party. ECF No. 3. The amended claim for relief does not appear to alter the original claim for relief in any material respect and will be granted. *See id*. at p. 7. The only appropriate Respondent in a petition for writ of habeas corpus is the custodian of the Petitioner; in this case the warden of FCI Cumberland. The amendment to include the United States will be denied.

[2] "Residential Re-entry Center" also known as halfway houses and formerly known as Community Corrections Centers. ECF No. 6-1 at p. 1, n. 2.

more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e). Application of the provision to Mullen's term of confinement renders a conditional release date of October 30, 2018. ECF No. 6-3 at p. 4, ¶ 5.

As an inmate's projected release date draws near, BOP staff make recommendations for RRC placement based on assessments of the inmate's needs for services as well as public safety concerns, and the BOP's need to manage inmate population. *Id*. at ¶6, *see also* Program Statement ("PS") 7310.04 at https://www.bop.gov/policy/progstat/7310_004.pdf. Unit Manager David Holler, who works at FCI Cumberland, explains in his declaration under oath that:

> Prior to the enactment of the Second Chance Act[3] in 2007, release preparation plans, including decisions regarding RRC referrals, were ordinarily established eleven (11) to thirteen (13) months prior to an inmate's projected release date. At that time, such placement was limited to the last ten percent (10%) of an inmate's sentence, not to exceed six (6) months. When the Second Chance Act went into effect in April 2008, however, it modified 18 U.S.C. §3624(c), eliminating the ten percent (10%) limitation language, and extending the maximum potential CCC/RRC placement to twelve (12) months. Due to the increase in maximum potential placement time, the time frame for reviewing and making RRC placement referrals increased by six (6) months as well. Thus, referrals and recommendations for RRC placement are now ordinarily made when there are seventeen (17) to nineteen (19) months remaining on an inmate's sentence.

ECF No. 6-3 at p. 4, ¶6.

Five factors, listed in 18 U.S.C. § 3621(b) are considered by the Unit Team when an inmate is considered for RRC placement. *Id*. at ¶ 7. Those factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5)

---

3   The Second Chance Act of 2007 was entitled "An Act To reauthorize the grant program for reentry of offenders into the community in the Omnibus Crime Control and Safe Streets Act of 1968, to improve reentry planning and implementation, and for other purposes." *Second Chance Act of 2007: Community Safety Through Recidivism Prevention (Second Chance Act of 2007)*, PL 110-199, April 9, 2008, 122 Stat 657.

any pertinent policy statement by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2). 18 U.S.C. § 3621(b).

When an inmate is referred for RRC placement, the unit team is required to provide proof of a valid release plan that has been approved by the United States Probation Office (USPO) in the district where the post-release supervision is to occur. ECF No. 6-3 at p. 5, ¶8. If an inmate wants to live in a judicial district other than the one where he or she was convicted and sentenced, a relocation request must be submitted to the team by the inmate. *Id*. The relocation request is then submitted to the USPO in the district where the inmate wants to reside for processing and approval. *Id*. The USPO makes a determination whether the inmate would likely be successful in reintegrating into society in the district requested through consideration of factors such as the proposed release residence, ties to that community, job prospects, and treatment resources. *Id*.

Mullen was convicted and sentenced in the Western District of New York; absent a request for a transfer to a different judicial district, Mullen's post-release supervision must be in that district. ECF No. 6-3 at p.6, ¶9; pp. 10 -12 (Attachment A). On January 20, 2017, Mullen requested a post-release relocation to the Northern District of Georgia with plans to reside with a cousin. ECF No. 6-3 at p.6, ¶9; p. 17 (Attachment C). The request was denied by the Northern District of Georgia USPO on February 23, 2017.[4] ECF No. 6-3 at p.6, ¶9; p. 19 (Attachment D).

Mullen then requested a post-release relocation to the Western District of North Carolina with a plan to reside with his son during supervision. ECF No. 6-3 at p.6, ¶9; pp. 21-48 (Attachment E). On March 15, 2017, a proposed release plan was submitted to the USPO for the

---

[4] Reasons for the denial included that Mullen has never resided in the Northern District of Georgia, that he did not have significant family ties in the area, and that he had no employment prospects in the area. ECF No. 6-3 at p. 19.

5

Western District of North Carolina which was approved on April 18, 2017. ECF No. 6-3 at p.6, ¶9; p. 50 (Attachment F).

On May 2, 2017, Mullen's unit team recommended that he receive an RRC placement in the Western District of North Carolina as of October 31, 2017. ECF No. 6-3 at p. 6, ¶10.

On August 22, 2017, the Residential Reentry Manager approved Mullen for RRC placement on November 8, 2017, which would provide him with 357 days of placement. ECF No. 6-3 at p.7, ¶11.

On October 3, 2017, the unit team received notice that Mullen's placement date was changed to June 28, 2018, reducing his placement to 125 days. *Id*. at ¶¶12, 13. The rationale provided for the change was explained in a memorandum from Jon Gustin, the Administrator for the Residential Reentry Management Branch, as follows:

> A review of . . . your individual circumstances and the resources available in the community show that you are being placed in the RRC in Charlotte, NC on 6-28-18 for a 125 day placement. This placement is in accordance with the provisions of your 3621e {RDAP} release, which requires a minimum of 120 days placement in community based treatment and is commensurate with the availability of resources in the community for this placement in accordance with the Second Chance Act. At this time, *additional resources are not available in the community to extend the placement*.

ECF No. 6-3 at p. 61 (October 27, 2017 Memorandum) (emphasis supplied).

Holler states in his declaration that although Mullen claims that the BOP has not sought out possible alternative RRC placements to allow for the maximum period of time he was initially recommended to receive, Mullen has not provided his Unit Team with any further requests to relocate to a different judicial district for his post-release supervision. ECF No. 6-3 at p. 7, ¶ 14. Holler explains, however, that if Mullen were to submit such a request the USPO in the judicial district where his supervision would be transferred would have to approve his case for supervision. That approval would likely include an investigation into Mullen's release plan

and would involve examination of his proposed release residence, potential familial ties, and available community resources. *Id*. Thus, Mullen's request for consideration "somewhere else" cannot be considered by the team at this time. *Id*. at p. 8.

**Standard of Review**

The Federal Rules of Civil Procedure apply to federal habeas corpus proceedings to the extent they are not inconsistent with any statutory provisions or the rules governing habeas corpus proceedings. Rules Governing § 2254 Cases[5] and Rule 12. Additionally, if it plainly appears from the petition and any attached exhibits that the Petitioner is not entitled to relief in the district court, the petition must be dismissed. *Id*. at Rule 4.

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

---

[5] The district court may apply any or all of the rules governing § 2254 petitions to any habeas corpus petition that does not concern a challenge to custody pursuant to a state-court judgment. Rules Governing § 2254 Cases, Rule 1(a).

7

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

For purposes of a petition for writ of habeas corpus, the only proper Respondent is the Warden of the facility where the Petitioner is confined. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). The warden of FCI-Cumberland, where Mullen is confined, is Timothy Stewart. All other named Respondents will be dismissed from this case.

Respondents move to dismiss the petition under Fed. R. Civ. P. 12(b)(1)[6] because 18 U.S.C. § 3625 divests this court of subject matter jurisdiction to review decisions such as this one that involve the BOP's discretionary determination of a prisoner's RRC placement period under 18 U.S.C. §§ 3621 and 3624(c)(1). Respondents argue in the alternative that the petition fails to state a claim upon which relief may be granted because the BOP did not abuse its discretion when it reduced Mullen's RRC placement and Mullen does not have a protected liberty interest in RRC placement or home confinement. ECF No. 6-1 at p. 2. In their reply, Respondents reiterate that Petitioner has no protected liberty interest in an RRC placement or home confinement and the BOP did not abuse its discretion in reducing Mullen's time in the placement. *Id.* The parties do not dispute that no constitutional claim is supported by the

---

[6] Respondents initially moved to dismiss for failure to exhaust administrative remedies (ECF No. 6-1 at p. 2), but in their reply "dismiss" that claim (ECF No. 9 at p. 3).

8

undisputed facts as asserted. *See* ECF No. 6-1 at pp. 14-16; ECF No. 8 at p. 7. Thus, the only question remaining is whether this court has subject matter jurisdiction to consider the claims asserted and grant the relief requested.

Mullen's RRC placement is governed by 18 U.S.C. §§ 3621 and 3624(c)(1). He alleges that the reduction of his RRC placement by eight months without cause or reason and without any attempt to find alternative possible placements to allow for the maximum period of time given violates the Administrative Procedure Act (APA). *See* ECF No. 8 at p. 4. The APA prohibits individuals from challenging agency action where such "agency action is committed to agency discretion by law" or where a statute "preclude[s] judicial review." 5 U.S.C. § 701(a). As Respondent notes (ECF No. 6-1 at pp. 8-11), 18 U.S.C. § 3625 provides that the provisions of the APA permitting judicial review of agency action "do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. Further, section 3625 specifically notes that "[t]he provisions of sections 554 and 555 and 701 through 706 of [the APA] do not apply to the making of any determination, decision, or order under [18 U.S.C. §§ 3621-3625]." *Id*.

This court has previously held that § 3625 precludes judicial review of any BOP "adjudication," which is defined as a "retrospective particularized fact-finding for each prisoner." *Minotti v. Whitehead*, 584 F. Supp.2d 750, 761 (D. Md. 2008) (consolidated action filed by three inmates challenging BOP regulation that excluded them from eligibility for early release). Courts have also held that "the BOP's substantive, discretionary RRC decisions are not reviewable in the district court pursuant to § 706(2)(A) of the APA." *Ingram v. Thomas*, 2011 WL 1791234, at *4 (D. Or. May 10, 2011) (citing *Reeb v. Thomas*, 636 F.3d 1124 (9th Cir. 2011)), *see also, Adams v. Thomas*, 2012 WL 1205104, at *3 (D. Or. Apr. 11, 2012).

Title 18 U.S.C. § 3621(b) provides that the "Bureau of Prisons shall designate the place of the prisoner's confinement." *See also Ingram v. Thomas*, 2011 WL 1791234 at *2 (D. Or. 2011) (noting the BOP has broad discretionary authority under 3621(b)). The statute provides for incentives for prisoners to participate in a RDAP, including the possibility of an early release. It provides:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [drug] treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). Section 3624(c)(1), further provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

The Fourth Circuit has held that Congress entrusted the decision whether to grant inmates early release under § 3621(e)(2)(B) "solely to the discretion and expertise of the BOP." *Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir.1999). Prisoners convicted of non-violent offenses who successfully complete a treatment program "may" have their remaining period of confinement reduced by up to one year. *Penalosa v. Warden, FCI Cumberland*, 2017 WL 79941, at *2 (D. Md. Jan. 6, 2017) (quoting 18 U.S.C. § 3621(e)(2)(B)). "The language of § 3621(e)(2) is permissive, stating that the BOP may grant inmates early release. It does not guarantee eligible inmates early release." *Id*. (citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001)).

Under the provisions outlined, the BOP has the discretion to reduce an inmate's prison term for up to one year after he or she completes the RDAP. *Id*. (quoting *Lopez*, 531 U.S. at 241

and citing *Pelissero*, 170 F.3d at 447), *see also, Miller v. Fed. Bureau of Prisons*, 147 Fed. App'x. 302, *4 (3d Cir. 2005) (holding "BOP's discretion under § 3621(b) is not subject to the temporal limitations of the BOP's mandate in § 3624(c)."); *Sacora v. Thomas*, 628 F.3d 1059 (9th Cir. 2010) (stating "the space between 'sufficient duration' and '12 months' [under § 3624(c)] was expressly left to the BOP to fill."); *Garcon v. Cruz*, 2015 WL 4557146 (D. S.C. July 28, 2015) (finding "the BOP has broad discretion to grant or deny sentence reductions to eligible prisoners; thus, 18 U.S.C. '§ 3621(e) does not create an entitlement to early release' when a prisoner completes the RDAP").

Mullen's assertions that this court should amend his RRC placement date to the original date noted; require the BOP to designate him to an RRC anywhere in the country so that he can have a full 12 months of placement; or order his release to home confinement, are all substantive decisions made by the BOP that are not subject to this court's review as a claim under the APA. Notwithstanding that fact, this court may still review the action taken by the BOP to determine if it acted beyond the scope of its discretion or it violated the Constitution. *See Webster v. Doe*, 486 U.S. 592 (1988).

Mullen claims that, upon being informed that that the RRC in Charlotte, NC lacked necessary resources, there arose a duty to re-designate him to an alternative RRC placement and Respondent's inaction was "arbitrary, capricious, an abuse of discretion and not in accordance with law." *Id*. at p. 6, citing 18 U.S.C. § 3621 and 5 U.S.C. § 706 *et seq.* Here, the BOP's decision to shorten Mullen's RRC placement was based on one of the five factors set forth in 18 U.S.C. § 3621(b): "the resources of the facility contemplated." Mullen was informed that the RRC lacked resources to accommodate the full 12 month placement. ECF No. 6-3 at p. 61. A decision made based on a rationale enumerated in statutory criteria is not arbitrary and

capricious. *See e.g.* 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (instructing courts to consider if agency decision was based on consideration of relevant factors). Mullen's assertion that it was incumbent upon the Unit Team to search the region for which he was approved for a different RRC that did have the resources to accommodate his 12 month placement requires the entire process for application and approval for a different placement to be jettisoned in favor of a widespread, labor intensive search without knowledge that Mullen would be approved for placement in the facility found. Such an expenditure of agency resources is neither required nor contemplated by the statutory provisions or the rules promulgated to implement its enforcement. Respondent's motion for summary judgment will be granted by separate Order that follows.

March 15, 2018 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge